ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK P.C.
John D. D'Ercole, Esq. (jdd@robinsonbrog.com)
Ronald B. Goodman, Esq. (goodman@robinsonbrog.com)
Michael A. Eisenberg, Esq. (mae@robinsonbrog.com)
875 Third Avenue – 9th Floor
New York, New York 10022-0123
(212) 603-6300



FILE COPY

12 CIV 5066

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEGGIADRO, LTD., BROOKS ROSS and ANN ROSS

        Plaintiffs,

-against-

WINSTON & STRAWN, LLP,

        Defendant.

Docket No.:

**COMPLAINT**

    Plaintiffs Leggiadro, Ltd. ("Leggiadro"), Brooks Ross ("Brooks") and Ann Ross ("Ann") (collectively, "Plaintiffs"), by their attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., alleges as and for their Complaint against Defendant Winston & Strawn, LLP ("W&S"), as follows:

### NATURE OF THE ACTION

    1.    This is an action brought by Plaintiffs against their former counsel W&S for breach of contract and professional malpractice. W&S was retained to negotiate an early termination and buy-out of Leggiadro's lease (the "Buy-Out") at its prime Madison Avenue location and to advise Plaintiffs on taxes they would be obligated to pay on any settlement sum paid by the Lessor. W&S advised Plaintiffs that the only tax that they would incur on any settlement sum paid by the Lessor was a Federal Long Term Capital Gains tax of fifteen percent.

{00577852.DOCX;5 }

Plaintiffs were relying on W&S to accurately advise them of the amount of tax for which they would be obligated on account of the Buy-Out. W&S negotiated a settlement sum but failed to account and/or advise Plaintiffs that New York City did not recognize Leggiadro's S-Corporation status and that, consequently, Leggiadro would be subject to New York City tax on business income, Brooks would be subject to personal federal, New York City and New York State taxes, and Ann would be subject to personal federal and New York State taxes, all totaling a substantial amount over and above the Federal Long-Term Capital Gains Tax. This failure and neglect by W&S constitutes a breach of contract and professional malpractice which proximately caused substantial damages to Plaintiffs for which they seek recovery in this action.

## PARTIES

2. Leggiadro was and is a duly formed and organized corporation under the laws of the State of New York with offices located at 743 Madison Avenue, New York, New York.

3. Brooks Ross is an individual residing in the State of New York.

4. Ann Ross is an individual residing in the State of Connecticut.

5. Upon information and belief, W&S was and is a foreign limited liability partnership duly formed and organized under the laws of the State of Illinois, which is the location of its principal place of business. W&S also has a satellite New York office located at 200 Park Avenue, New York, New York 10166.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, based upon the parties' diversity of citizenship, and the amount in controversy, exclusive of interests and costs, exceeds $75,000.

7. Venue is proper in this District pursuant to 28 U.S.C. 1391 (a) as the Defendant resides in this District.

## FACTUAL BACKROUND

8. Plaintiffs repeat and reallege paragraphs 1 through 7 of this complaint as if fully set forth herein.

9. Leggiadro is a clothing retailer, specializing in high end women's apparel.

10. Brooks and Ann are the two sole individual principals of Leggiadro.

11. W&S is a professional firm engaged in the practice of law.

12. On April 3, 2002, Leggiadro, as tenant, entered into a fifteen-year lease (the "Lease") with Carlton House, Inc. ("Carlton"), as landlord, for the ground floor and basement (the "Store") in the building at 680 Madison Avenue (the "Building").

13. The Building was situated in a prime geographic shopping area on Madison Avenue featuring other well known, prestigious retailers such as Barneys and Bloomingdales, which complemented Leggiadro's high end clientele.

14. Pursuant to its Lease, Leggiadro had a right of access to the Building's lobby, restrooms and basement storage facility.

15. Subsequent to entering into the Lease with Leggiadro, Carlton sold the Building to its present owners, AGE 680 Madison LLC ("680 Madison" or the "Lessor"), which assumed the Lease with Leggiadro.

16. 680 Madison desired to convert the Building into a condominium and shopping mall and, in 2011, notified Leggiadro that it wished to negotiate an early termination and Buy-Out of the Lease.

17. Leggiadro did not want to give up its prime location at 680 Madison Avenue because it was its flagship store. Over the course of some 25 years, both at 680 Madison and its prior location, Leggiadro developed an exclusive clientele and prestigious reputation. An early termination of the Lease would require Leggiadro to find an alternate location at higher rent and incur the substantial costs in moving including suffering a temporary loss of business until the store was established at its new location.

18. In the buyout negotiation with 680 Madison, Leggiadro had a strong bargaining position because: 1) the Lease did not come to term for another 6 years; 2) 680 Madison could not go forward with its construction plans without great difficulty if Leggiadro remained in occupancy at the Store, given its rights to the lobby and basement non-adjacent storage area; and 3) the prime location of the Store that Leggiadro would be giving up in agreeing to move.

19. Plaintiffs retained W&S to represent their interests in the negotiations with 680 Madison because of its reputation as an established and prominent law firm.

20. Plaintiffs requested W&S to advise them of the taxes for which they would be obligated to pay on account of payments received from the Lessor for the Buy-Out. The amount of tax obligation Plaintiffs would incur as part of the settlement with the Lessor was a key element in the determination of whether Plaintiffs would agree to an early termination of the Lease and the amount of the settlement sum they would accept.

21. W&S ultimately negotiated a Buy-Out price with 680 Madison ("Settlement Sum").

22. In negotiating the Settlement Sum, W&S failed to account for and advise Plaintiffs of that New York City did not recognize Leggiadro's S-Corporation status and that, consequently, Leggiadro would be subject to New York City tax on the Settlement Sum, and

Brooks and Ann would be subject to Federal, New York City and New York State taxes on personal income flowing to them through Leggiadro.

23. Prior to filing their 2011 tax returns in 2012, Plaintiffs were advised that on account of the Buy-Out additional unexpected taxes had to be paid in addition to the Federal Long-Term Capital Gains Tax including (i) the New York City tax on unincorporated business income for which Leggiadro was obligated, (ii) the New York City tax on Brooks' personal income flowing through Leggiadro for which he was obligated, and (iii) the New York State tax on Brooks' and Ann's personal income flowing through Leggiadro for which they were obligated.

24. In total, Leggiadro, Brooks and Ann accrued a tax obligation substantially over the amount the defendant advised (the "Obligated Sum").

25. In negotiating the Settlement Sum with 680 Madison, W&S only advised Plaintiffs that they would owe a Federal Long Term Capital Gains tax and failed to take into account and advise Plaintiffs of the remaining taxes for which they were obligated. The resulting Settlement Sum failed to account for the additional taxes owed by Plaintiffs over and above the Federal Long Term Capital Gains tax (the "Shortfall Sum").

26. Had W&S accurately informed Plaintiffs of their liabilities for additional taxes on unincorporated business income and personal income, and correctly calculated the Obligated Sum, Plaintiffs would not have accepted the Settlement Sum but instead would have insisted that the Settlement Sum be increased by the Shortfall Sum.

27. Plaintiffs have incurred additional attorney's fees on account of W&S's erroneous tax advice which they would not have incurred but for W&S's breach of contract, malpractice and negligent misrepresentation.

## FIRST CAUSE OF ACTION
### (For Breach of Contract)

28. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 27 as if fully set forth herein.

29. Plaintiffs entered into a written retainer agreement setting forth their respective contractual rights and obligations.

30. Plaintiffs relied upon the tax advice given to them by W&S in accepting the Settlement Sum from 680 Madison that the only tax for which they would be obligated was payment of a Federal Long-Term Capital Gains tax.

31. Plaintiffs performed all of their obligations under the Retainer Agreement.

32. W&S breached its agreement with Plaintiffs by failing to advise Plaintiffs that they would be liable for the Shortfall Sum and/or incorrectly calculating the Obligated Sum in negotiating a settlement with 680 Madison and in failing to make sure that the Settlement Sum was inclusive of all taxes owed by Plaintiffs on account of the settlement in addition to the Federal Long-Term Capital Gains Tax.

33. Plaintiffs relied upon the advice given to them by W&S and would not have accepted the Settlement Sum if they knew they were liable for the Shortfall Sum in addition to payment of a Federal Long-Term Capital Gains tax and/or would have insisted that the Settlement Sum be increased by the Shortfall Sum.

34. By reason of the foregoing, Plaintiffs have suffered damages reasonably foreseeable by W&S in an amount to be determined at trial, but no less than the Shortfall Sum, plus attorney's fees.

## SECOND CAUSE OF ACTION
### (For Professional Malpractice)

35. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 34 as if fully set forth herein.

36. In agreeing to represent Plaintiffs in the negotiations with 680 Madison, W&S undertook a duty to represent Plaintiffs with the ordinary reasonable skill and knowledge possessed by a member of the legal profession.

37. W&S breached its duty owed to Plaintiffs and committed professional malpractice by failing to advise Plaintiffs that they would be liable for the Shortfall Sum and/or incorrectly calculating the Obligated Sum in negotiating a settlement with 680 Madison and in failing to make sure that the Settlement Sum was inclusive of all taxes owed by Plaintiffs on account of the settlement in addition to the Federal Long-Term Capital Gains Tax.

38. Plaintiffs relied upon the advice given to them by W&S and would not have accepted the Settlement Sum if they knew they were liable for the Shortfall Sum in addition to payment of a Federal Long-Term Capital Gains tax and/or would have insisted that the Settlement Sum be increased by the Shortfall Sum.

39. By reason of the foregoing, Plaintiffs have suffered actual and ascertainable damages proximately caused by W&S's breach of duty and professional malpractice in an amount to be determined at trial, but no less than the Shortfall Sum, plus attorney's fees.

## THIRD CAUSE OF ACTION
### (For Negligent Misrepresentation)

40. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 39 as if fully set forth herein.

41. W&S had a special relationship or relationship of privity with Plaintiffs which imposed a duty on the part of W&S to impart correct information to Plaintiffs.

42. The tax advice imparted to Plaintiffs—that they would only be liable for a Federal Long Term Capital Gains Tax of 15% on the Settlement Sum-was incorrect.

43. Plaintiffs reasonably relied on the tax advice given to them by W&S.

44. By reason of the foregoing, Plaintiffs have suffered actual and ascertainable damages proximately caused by W&S's negligent misrepresentation in an amount to be determined at trial, but no less than the Shortfall Sum, plus attorney's fees.

**WHEREFORE**, Plaintiffs Leggiadro, Ltd., Brooks Ross and Ann Ross demand judgment against Defendant Winston & Strawn, LLP, as follows:

    a.    on their First Cause of Action for Breach of Contract, in an amount to be determined at trial, but no less than the Shortfall Sum, plus attorney's fees;

    b.    on their Second Cause of Action for Professional Malpractice, in an amount to be determined at trial, but no less than the Shortfall Sum, plus attorney's fees;

    c.    on their Third Cause of Action for Negligent Misrepresentation, in an amount to be determined at trial, but no less than the Shortfall Sum, plus attorney's fees;

    d.    applicable prejudgment interest;

    e.    reasonable attorney's fees;

 f. the costs and disbursements of the action; and

 g. for such other and further relief as the Court deems just and proper.

Dated: New York, New York  
   June 27, 2012

ROBINSON BROG LEINWAND  
GREENE GENOVESE & GLUCK, P.C.

By: _____  
John D. D'Ercole, Esq.  
(jdd@robinsonbrog.com)  
Ronald B. Goodman, Esq.  
(goodman@robinsonbrog.com)  
Michael A. Eisenberg, Esq.  
(mae@robinsonbrog.com)  
875 Third Ave, 9th Floor  
New York, NY  10022-0123  
(212) 603-6300  
*Attorneys for Plaintiff*